UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT NEAL-ANDERSON,<br><br>Petitioner,<br><br>v.<br><br>PEOPLE OF CALIFORNIA,<br><br>Respondent. | No. 2:15-cv-01218 TLN DB<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, Robert Neal-Anderson, is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges a judgment of conviction entered against him on March 9, 2012 in the Sacramento County Superior Court ("the Superior Court") for second degree murder.

Petitioner seeks federal habeas relief on three grounds: (1) the trial court prejudicially erred and violated his constitutional rights by instructing the jury with the former version of CALCRIM No. 570 on the heat of passion theory of manslaughter; (2) the prosecutor committed prejudicial misconduct during his supplemental rebuttal argument by misstating the law with respect to heat of passion voluntary manslaughter; and (3) the trial court prejudicially erred by instructing the jury with CALCRIM No. 3471, regarding mutual combat, without also providing a bracketed portion of the instruction covering the situation in which the victim of a simple assault responds in a sudden and deadly counterattack. (ECF No. 1 at 2.)

1

As discussed below, the undersigned recommends that his habeas petition be denied.

## I. BACKGROUND

### A. Factual background[1]

[The decedent, David Maxey,] was stabbed to death in his apartment on October 2, 2009, a short time after 11:00 p.m. . . . Maxey, a slight man of 60 years, was nude from the waist down when he was stabbed, except for the presence of a leather "cock ring" at the base of his penis. [Petitioner] admitted to stabbing Maxey, but claimed he acted in self-defense after Maxey threw bleach in his face. [Petitioner], a young man of 23 years with an average build, sold cocaine to Maxey and claimed the stabbing was the culmination of an argument over the amount of cocaine [he] had delivered, an agreement for [him] to engage in masturbation with Maxey as recompense, and ultimately a physical confrontation as Maxey advanced on [him] with no pants on, invading [his] personal "boundary." . . .

***

Naturally, [petitioner] provided the only version of the events occurring inside Maxey's apartment. . . . [According to him, Maxey let him inside his house on the night in question.] . . . [Their] conversation "basically kind of led into [Maxey] not having the right amount of cocaine." [He] "felt bad" because he knew he had shorted Maxey, so he offered to give Maxey some of his money back. Maxey refused. [He] then offered to take back the drugs, but Maxey said he had already used them. [He] asked Maxey what he could do to rectify the situation. According to [him], Maxey "kind of smiled" and said: "[W]ell, there is something you could do for me. I've had a rough day today." [He] knew Maxey was gay and "assumed that he was talking about something sexual." [He] was "unsure" about his own sexuality and asked Maxey what he had in mind. Maxey did not clearly state his intentions, but asked [him] to come into the bathroom with him. [He] felt "uncomfortable," but "obligated in a sense, too," so he followed Maxey to the bathroom. Maxey removed his pants and put a leather "cock ring" around his penis. At this point, [he] told Maxey: "I'm not going to take it up the ass or nothing." Maxey laughed and said: "[T]hat's not what I had in mind." [He] assumed he and Maxey would be masturbating in front of each other.

---

[1] The court takes the following factual summary from the California Court of Appeal for the Third Appellate District's unpublished opinion affirming petitioner's conviction. See generally People v. Neal-Anderson, C070700, 2014 WL 1393953 (Cal. Ct. App. Apr. 10, 2014). Under AEDPA, the Court of Appeal's "[f]actual determinations . . . are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). Petitioner has not submitted clear and convincing evidence that the Court of Appeal's factual findings were erroneous. Indeed, he does not challenge its relevant factual findings. See Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (presumption that appellate court's factual findings are correct particularly appropriate if petitioner has not challenged them).

> The situation turned violent after [he] laughed at Maxey for being unable to achieve a fully erect penis. [He] backed out of the bathroom. Maxey followed, saying: "[C]ome here." [He] pushed Maxey to the floor when he felt Maxey got too close, invading his personal "boundary." Maxey asked [him] what his problem was, grabbed the bottle of bleach that was in his room, and splashed [him] in the face. [He] doubled over and spit out the bleach that got into his mouth. His eyes instantly shut and started to burn. His entire face burned. [He] then felt an impact on the top of his head. He pulled out a pocket knife and started backing out of Maxey's bedroom, saying: "I have a knife" and "I just want to get out of here." Unable to see, [he] began swinging the knife as he felt his way into the living room. Before he reached the front door, [he] heard the sound of "feet stampeding towards [him]," which caused [him] to panic and "swing[ ] the knife even harder." [He] felt the knife make contact with something, but was not sure what it was. . . .

Neal-Anderson, 2014 WL 1393953, at *1, 3–4.

### B. Procedural Background

On February 8, 2012, the jury convicted petitioner of second degree murder and found him to have personally used a deadly weapon. Neal-Anderson, 2014 WL 1393953, at *1. Consequently, he was sentenced to serve an indeterminate state prison term of 15 years to life, plus a consecutive determinate term of one year. Id.; see also (ECF No. 1 at 276, 320.)

On appeal, petitioner raised the same three claims that he raises in this case. They are:

> the trial court prejudicially erred and violated his constitutional rights by instructing the jury with the former version of CALCRIM No. 570 on the heat of passion theory of voluntary manslaughter; (2) the prosecutor committed prejudicial misconduct during his supplemental rebuttal argument by misstating the law with respect to heat of passion voluntary manslaughter; and (3) the trial court prejudicially erred by instructing the jury with CALCRIM No. 3471, regarding mutual combat, without also providing a bracketed portion of the instruction covering the situation in which the victim of a simple assault "responds in a sudden and deadly counterattack."

Neal-Anderson, 2014 WL 1393953, at *1.

On April 14, 2014, the Court of Appeal rejected these arguments and affirmed the trial court's judgment. Id. The California Supreme Court denied review on June 18, 2014. (ECF No. 1 at 2.)

On June 8, 2015, petitioner filed his federal habeas petition. (Id.) The state answered, (ECF No. 14), and he filed a traverse, (ECF No. 27).

3

## II. STANDARD OF REVIEW

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), "clearly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." Greene v. Fisher, 565 U.S. 34, 38 (2011) (citation and emphasis omitted); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Yet "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (citation omitted). However, circuit court precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (per curiam) (citations omitted). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct." Id. at 1451 (citations omitted). Furthermore, if courts of appeals have "diverged widely" in their treatment of an issue, it cannot be said that "clearly established Federal law" governs that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (citations omitted).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citation omitted); accord Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).

A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411. "Rather, that application must also be unreasonable." Id.; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citation omitted) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Lockyer, 538 U.S. at 75 (citation omitted) ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous."). Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. The Richter presumption applies to both state-court decisions that do not address any of the

5

petitioner's claims and ones that address "some but not all of [the petitioner's] claims." Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013). Thus, if the petitioner raises related state and federal claims and the state court denies both but expressly addresses only the state claim, its silent denial of the federal claim is a merits adjudication under § 2254(d). See id. at 1091–92, 1096.

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which [the court] can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

### III. ANALYSIS

#### A. Whether the trial court erred by instructing the jury with the former version of CALCRIM No. 570 on the heat of passion theory of manslaughter

##### 1. Manslaughter under California law

"Manslaughter is a lesser included offense of murder." People v. Beltran, 56 Cal. 4th 935, 942 (Cal. 2013). "The mens rea element required for murder is a state of mind constituting either express or implied malice." Id. "A person who kills without malice does not commit murder." Id. "Heat of passion is a mental state that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." Id.

////

"The heat of passion requirement for manslaughter has both an objective and a subjective component." People v. Steele, 27 Cal. 4th 1230, 1252 (Cal. 2002) (citation omitted). Subjectively, "[t]he defendant must actually . . . kill under the heat of passion." Id. (citation omitted). Objectively, "this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances[.]" Id. (citation omitted). In other words, the provocation must be sufficient to cause a reasonable person to act from passion and not from judgment. Beltran, 56 Cal. 4th at 949, 953.

### 2. Petitioner's argument

Petitioner argues that former CALCRIM No. 570 misstated the objective component of heat of passion. He contends that this instruction "included language suggesting that the jury must find that the provocation would cause a reasonable person to kill," in contrast to provocation that would cause a reasonable person to act from passion and not from judgment. (ECF No. 1 at 17.) This alleged error, he continues, prejudiced him because there was "substantial evidence that Maxey provoked [him] by throwing bleach in his face and making an unwanted sexual advance." (Id.) Thus, while a reasonable person might not have killed Maxey, "such provocation could cause a reasonable person to act from passion rather than from judgment." (Id.)

### 3. The Court of Appeal's decision

Former CALCRIM No. 570, as given to the jury in this case, provided in relevant part: . . . *In deciding whether the provocation was sufficient, consider whether an ordinary person of average disposition would have been provoked and how such a person would react in the same situation knowing the same facts*." (CALCRIM No. 570 (2006) italics added.)

\*\*\*

Our Supreme Court's recent decision in [*Beltran*] requires us to reject [petitioner's] argument that the instruction . . . was susceptible to such a reading [i.e., that the jury had to find that the provocation would cause a reasonable person to kill]. There, the Court of Appeal held the challenged language "was potentially ambiguous because it 'did not expressly limit the jurors' focus to whether the provocation would have caused an average person to act out of passion rather than judgment' and 'allowed, and perhaps even encouraged, jurors to consider whether the provocation would cause an average person to do what the defendant did; i.e., commit a homicide.'" (*Id.* at p. 954.) Our Supreme Court disagreed that the instruction was "ambiguous as written," explaining: "[U]nder ordinary

7

circumstances, the instruction's statement that the jury should consider how a person of average disposition 'would react' under the same circumstances [is] unproblematic. . . . [T]he court instructed that the heat of passion principle came into play if defendant acted under the influence of intense emotion that obscured his . . . reasoning or judgment. Telling the jury to consider how a person of average disposition 'would react' properly draws the jury's attention to the objective nature of the standard and the effect the provocation would have on such a person's state of mind." (*Ibid.*)

Neal-Anderson, 2014 WL 1393953, at *5.

### 4. Discussion

"[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71–72 (citation omitted). "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in [some way]." See id. at 72. Rather, the only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (citing cases). This standard is demanding. See id. at 72–73.

Consistent with these principles, where the state court holds that jury instructions "correctly set forth state law, . . . it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) (citation omitted).

Here, as the Court of Appeal noted, the California Supreme Court has rejected the argument that the challenged language in former CALCRIM No. 570 misstated the objective component of heat of passion. Beltran, 56 Cal. 4th at 954 ("We disagree that the instruction is ambiguous as written."). Its interpretation binds this court. Bradshaw v. Richey, 546 U.S. 74, 78 (2005) (per curiam) (federal habeas courts may not disregard state supreme court's authoritative interpretation of state law). Furthermore, the California Supreme Court declined to review the Court of Appeal's decision, which reinforces that its interpretation is authoritative. See Hicks v. Feiock, 485 U.S. 624, 629–30 & n.3 (1988); West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940). Accordingly, petitioner's first claim lacks merit.

////

**B. Whether the prosecutor committed misconduct by misstating the law with respect to heat of passion voluntary manslaughter**

1. Petitioner's argument

Similar to his first claim, he contends that the prosecutor's supplemental rebuttal argument misstated the objective component of heat of passion. According to him, the prosecutor improperly told the jury that, to conclude that he killed Maxey in the heat of passion, they had to find that "the provocation would cause a [reasonable] person to kill another." (ECF No. 1 at 24.) His counsel did not object to the prosecutor's argument. (Id.) Yet he contends that his counsel's failure to object constituted ineffective assistance. (Id.)

2. Additional background

During deliberations, the jury twice asked for clarification between voluntary manslaughter and second degree murder. Neal-Anderson, 2014 WL 1393953, at *6. So "the trial court allowed the parties to deliver supplemental arguments to the jury." Id.

The prosecutor delivered his supplemental closing first. Id. He argued that petitioner "was guilty of first degree murder on either a felony-murder theory or a premeditated and deliberate killing theory." Id. Then, during his supplemental closing, petitioner's counsel argued that he "provided a reasonable explanation concerning the events that transpired in Maxey's apartment and urged the jury to return a verdict of not guilty based on self-defense." Id. at * 7. Defense counsel further argued:

> "And also assuming some of you just can't find it possible to return a not guilty verdict, I would just like to add this: If the issue of provocation, that would be heat of passion, you have seen the instruction, and that's not my main theory, or imperfect self-defense, my theory, of course, is perfect self-defense, is if there's evidence that would support either of those two theories in a murder case, the People must prove beyond a reasonable doubt that these circumstances were lacking in order to establish the murder element of malice. [¶] So if you find imperfect self-defense or heat of passion, the only possible verdict is voluntary manslaughter. The appropriate and just and fair, but very difficult verdict that you should return based on the evidence that you have heard in this courtroom is not guilty."

Neal-Anderson, 2014 WL 1393953, at *7.

////

9

Thereafter, in his supplemental rebuttal argument, the prosecutor addressed heat of passion voluntary manslaughter:

> "Okay. Imagine a situation, if you can, where you live on a street. It is residential. There's houses, but it is a thoroughfare, not a cul-de-sac. And you come home from work after a long day, and you turn onto your street. You live at the far end, and you see there is emergency vehicles, police, fire, and you are concerned something took place. [¶] And as you drive closer to your house, you see there is an ambulance there as well, and your level of concern rises because you know the folks on your street, and you hope that no one was hurt. You get down and you see that the vehicles are actually stopped in front of your house, right? You see that they are working on someone in front of your driveway, and you get out of your vehicle and you approach and you see they are actually working on your daughter, right? [¶] Medics are tending to her. They are trying to take care of her. You are concerned, confused, disoriented. And as you go up there, you fight your way through and you hold her, right? And as you are holding her, your daughter passes. Your world is somewhat spinning out of control, and they explain to you that your daughter was running into the street to get a ball, and she was hit by a car being driven by that man, who is seated across the street holding an ice bag to his head. [¶] They tell you that guy was going through your neighborhood, he was speeding and he was drunk, right? You are going to be overcome with passion, anger, and you run over to that person because you want to take from that person what it is that they took from you, right? You run up to that person. You might even say I will kill you, you son of a bitch, and you strike out and you punch them with all the loss and emptiness that you feel over what was taken from you. [¶] You hit them in the head. They fall over backwards. Their head hits the concrete and they die, right? You have just committed a voluntary manslaughter because you purposely wanted to kill that person in the heat of passion, but that because of that passion, your reason was overcome, <u>and any reasonable person in those circumstances would react so intensely</u>, right? [¶] That's not what we have here."

Neal-Anderson, 2014 WL 1393953, at *7 (emphasis added).

### 3. The Court of Appeal's decision

The Court of Appeal rejected petitioner's argument that his counsel was ineffective for failing to object to the prosecutor's argument about the meaning of heat of passion. It reasoned:

> [Petitioner] argues "reasonably competent counsel would have objected" to the prosecutor's supplemental rebuttal argument because it incorrectly "informed the jury that the provocation [required for heat of passion voluntary manslaughter] must be such as to require an average person to kill." In [*Beltran*], after holding former CALCRIM No. 570 did not misstate the law, our Supreme Court explained that "the parties' closing arguments muddied the waters on [the objective component of heat of passion]. . . . [T]he prosecutor's examples . . . seemed to suggest that the jury should consider the ordinary person's conduct and whether

10

such a person would kill. . . . [In this case,] the prosecutor described a situation in which a person whose daughter is killed by a drunk driver reacts out of passion and kills the drunk driver. The crime committed in this situation is voluntary manslaughter, argued the prosecutor, because the person's "reason was overcome, and any reasonable person in those circumstances would react so intensely." While also not entirely clear, telling the jury that "any reasonable person . . . would react *so intensely* " (italics added) after describing a hypothetical situation that caused a person to react by killing does seem to suggest the jury should consider whether the provocation in this case was sufficient to cause a reasonable person to kill.

> However, assuming the prosecutor's argument muddied the waters on the provocation issue, we nevertheless conclude there may be a satisfactory explanation for defense counsel's failure to object to the argument. The primary defense theory was that [petitioner] acted in complete self-defense. While the jury was instructed on the lesser-included offense of voluntary manslaughter, defense counsel argued vigorously for an outright acquittal and made only brief reference to the crime of voluntary manslaughter, specifically telling the jury not to find [petitioner] guilty of that crime. The prosecutor then made the questionable comments concerning provocation. Defense counsel reasonably could have concluded that objecting to these comments would serve only to draw the jury's attention to voluntary manslaughter—a lesser crime than murder, to be sure, but nevertheless a serious crime with serious penal consequences. . . . .

> Because the record does not affirmatively disclose defense counsel had no rational tactical purpose for his failure to object to the prosecutor's comments concerning provocation, we must reject [petitioner's] claim of ineffective assistance of counsel. (See *People v. Zapien*, *supra*, 4 Cal. 4th at p. 980.)

Neal-Anderson, 2014 WL 1393953, at *8–9.

### 4. Discussion

Again, petitioner argues that counsel was ineffective for failing to object to the prosecutor's supplemental comments on the meaning of heat of passion. This argument lacks merit.

To establish a claim of ineffective assistance of counsel, he must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficiency, he must show that his attorney's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. Id. at 688. To prove prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

11

been different." Id. at 694.

Regarding the performance prong, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Premo v. Moore, 131 S. Ct. 733, 739–40 (2011) (citations omitted). Thus, courts must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Harrington v. Richter, 562 U.S. 86, 101, 107 (2011). Likewise, courts must "give the attorneys the benefit of the doubt" and "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 195 (2011) (some alterations omitted).

Regarding the prejudice prong, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

It is "all the more difficult" to prevail on a Strickland claim under § 2254(d). Richter, 562 U.S. at 105. As the standards that Strickland and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. Id. (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." Id. Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." Id.

Here, there is a reasonable argument that defense counsel's failure to object to the prosecutor's supplemental rebuttal argument on the meaning of heat of passion was not deficient. The Court of Appeal found that defense counsel's primary theory was that petitioner acted in perfect self-defense. To support this finding, it noted that defense counsel vigorously argued for

an outright acquittal and only briefly mentioned voluntary manslaughter. Further, the Court of Appeal reasoned that defense counsel reasonably could have concluded that objecting to these comments would serve only to draw the jury's attention to voluntary manslaughter. It added that, while voluntary manslaughter is a lesser crime than murder, it still has serious penal consequences. Therefore, it concluded that the record did not affirmatively disclose that defense counsel had no rational, tactical purpose for his failure to object to the prosecutor's argument.

The record supports the Court of Appeal's findings, and the inferences that it drew from them are rational. Moreover, defense counsel enjoy "wide latitude . . . in making tactical decisions." Strickland, 466 U.S. at 689. Accordingly, there is a reasonable argument that defense counsel's failure to object to the prosecutor's remarks was not deficient. Accordingly, petitioner's second claim lacks merit.

**C. Whether the trial court erred by instructing the jury with CALCRIM No. 3471, without providing instruction in which the victim of a simple assault responds in a sudden and deadly counterattack**

1. Petitioner's argument

Petitioner asserts that his theory of the case was that "he acted in self-defense or imperfect self-defense," but that the "trial court improperly eliminated this theory . . . by instructing the jury [that he] could not successfully plead self-defense if he was the initial aggressor[.]" (ECF No. 1 at 27.) In his assessment, the trial court instructed the jury that he could not have acted in self-defense if he was the initial aggressor because it did not give the bracketed portion of CALCRIM No. 3471. (Id. at 28.) In his words, the bracketed portion of this instruction advises "the jury that the defendant may use deadly force if he starts the fight using non-deadly force, and the opponent escalates to the use of deadly force[.]" (Id.) Although he did not object to the instruction, he contends that his counsel was ineffective for failing to object to it. (Id. at 27.)

2. CALCRIM No. 3471

This instruction concerns the right to self-defense of defendants who engage in mutual combat or are initial aggressors. As given in this case, it provides:

13

"A person who engages in mutual combat or who is the first one to use physical force has a right to self-defense only if: [¶] One, he actually and in good faith tries to stop fighting; [¶] Two, he indicates by word or by conduct to his opponent in a way that a reasonable person would understand that he wants to stop fighting and that he has stopped fighting; and [¶] Three, he gives his opponent a chance to stop fighting. [¶] If a person meets these requirements, he then has a right to self-defense if the opponent continues to fight. [¶] A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

Neal-Anderson, 2014 WL 1393953, at *9.

Petitioner contends that the trial court should have given the bracketed portion of this instruction as well. It provides:

"If you decide that the defendant started the fight using non-deadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting."

Id.

### 3. The Court of Appeal's decision

Here, there is substantial evidence, in the form of [petitioner's] testimony, he committed a simple assault upon Maxey by shoving him to the ground after Maxey approached him with his pants down. Maxey's counter assault, according to [petitioner's] account, was to throw bleach in his face. [Petitioner's] eyes instantly shut and his face burned. He then felt an impact on the top of his head. Pulling out a pocket knife and backing out of Maxey's bedroom, [he] said: "I have a knife" and "I just want to get out of here." Unable to see, [he] began swinging the knife as he felt his way into the living room. Before he reached the front door, [he] heard the sound of "feet stampeding towards [him]," which caused [him] to panic, and "swinging the knife even harder," he inadvertently stabbed Maxey in the neck. Thus, under [his] version of events, he tried to stop fighting, indicated to Maxey he wanted to stop fighting, and gave Maxey a chance to stop fighting by backing out of the bedroom in an attempt to leave the apartment. The bracketed portion of the instruction would have applied only if Maxey responded with such sudden and perilous force [he] was unable to withdraw from the fight or indicate to Maxey his desire to do so. There is no substantial evidence to support this view of the facts. Indeed, [his] own testimony indicates that, despite being splashed in the face with bleach, he did withdraw from the fight and told Maxey as much.

There was no instructional error.

Neal-Anderson, 2014 WL 1393953, at *10.

////

14

####         4.    Discussion

As stated above, where the state court holds that jury instructions "correctly set forth state law, . . . it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Waddington, 555 U.S. at 192 n.5. This is especially so where, as here, the state's highest court has denied review of the lower court's decision. See Hicks, 485 U.S. at 629–30 & n.3; West, 311 U.S. at 237; see also Bradshaw, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Here, the Court of Appeal held that there was no instructional error, and the California Supreme Court denied review of its decision. Federal habeas relief is unavailable to challenge its decision.

Furthermore, petitioner's claim would fail even if he could challenge the decision under the rubric of due process. The only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," which is a demanding standard. Estelle, 502 U.S. at 72–73. Indeed, his challenge to the trial court's failure to give the bracketed part of the instruction is "especially heavy" because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Yet, in appropriate cases, "[f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable." Clark v. Brown, 450 F.3d 898, 904–05 (9th Cir. 2006) (citing cases). However, a defendant is entitled to an instruction on a defense theory only if the evidence supports the theory. See Mathews v. United States, 485 U.S. 58, 63 (1988); accord Murray v. Schriro, 746 F.3d 418, 452 (9th Cir. 2014).

Here, the Court of Appeal reasonably concluded that the evidence did not support giving the jury the bracketed portion of the instruction covering a sudden and deadly counterattack. As the Court of Appeal correctly noted, that portion would apply only if Maxey responded with such sudden and perilous force that petitioner could not withdraw from the fight or indicate his desire

to do so.

However, petitioner's own testimony indicated that he withdrew from the fight and indicated his desire to do so. Granted, he testified that Maxey threw bleach in his face, hit him on the head, and charged him. But he also testified that, despite being splashed in the face with bleach, he backed out of the bedroom into the living room, warned Maxey that he had a knife, and told him that he just wanted to leave. Therefore, the Court of Appeal's conclusion that he did not face a sudden and deadly counterattack was reasonable. Hence, petitioner's derivative ineffective assistance of counsel claim fails. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (defense counsel does not have to "pursue every claim or defense, regardless of its merit, viability, or realistic chance for success").

For these reasons, the Court of Appeal's rejection of claim (3) was not contrary to, or an unreasonable application of, clearly established federal law.

## IV.     CONCLUSION

Petitioner has failed to establish that the Court of Appeal's decision rejecting his claims was contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Because he has not satisfied the requirements of § 2254(d), the undersigned recommends that his habeas petition be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the

objections.

The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: August 15, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:11
DLB1/prisoner-habeas/neal1218.fr

17